**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Diana Olson, on behalf of herself and her children as heirs at law of Richard Olson, deceased; and Diana Olson as Personal Representative of the Estate of Richard Olson, | ) ) ) ) ) ) | **ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT TO INCLUDE CLAIM FOR PUNITIVE DAMAGES** |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. A4-04-102 |
| Ford Motor Company, a Corporation, | ) ) | |
| Defendant. | ) | |

Before the Court is the Plaintiff's Motion for Leave to File Amended Complaint to Include Claim for Punitive Damages filed on August 31, 2005. For the reasons set forth below, the Plaintiff's motion is granted.

## I.     BACKGROUND

This dispute stems from a one-vehicle accident resulting in the death of Richard Olson. On August 20, 2004, the Plaintiff, Diana Olson (Richard Olson's wife) filed suit on behalf of herself and her children alleging four claims: (1) strict products liability, (2) negligence, (3) failure to warn, and (4) breach of warranty. Olson alleges that design defects in the speed control system of Richard Olson's 1998 Ford Explorer were the direct and proximate cause of the accident and the resulting death which occurred on September 17, 2002. On May 17, 2005, Olson was granted leave to amend the complaint to include a survival action. On August 31, 2005, Diana Olson filed a Motion for

1

Leave to File Amended Complaint to Include Claim for Punitive Damages pursuant to Section 32-03.2-11 of the North Dakota Century Code.

## II.     LEGAL DISCUSSION

Section 32-03.2-11(1) of the North Dakota Century Code provides, as follows:

> In any action for the breach of an obligation not arising from contract, when the defendant has been guilty by clear and convincing evidence of oppression, fraud, or actual malice, the court or jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant. Upon commencement of the action, the complaint may not seek exemplary damages. After filing the suit, a party may make a motion to amend the pleadings to claim exemplary damages. The motion must allege an applicable legal basis for awarding exemplary damages and must be accompanied by one or more affidavits or deposition testimony showing the factual basis for the claim. The party opposing the motion may respond with affidavit or deposition testimony. If the court finds, after considering all submitted evidence, that there is sufficient evidence to support a finding by the trier of fact that a preponderance of the evidence proves oppression, fraud, or actual malice, the court shall grant the moving party permission to amend the pleadings to claim exemplary damages. For purposes of tolling the statute of limitations, pleadings amended under this section relate back to the time the action was commenced.

N.D.C.C. § 32-03.2-11(1). This statute provides a substantive right and, therefore, applies to this action. See Lowell v. Zurich Ins. Co., Civ No. A3-91-72, 1992 WL 212233 at *2 (D. N.D. Aug. 20, 1992) (applying North Dakota's punitive damage statute in a case where jurisdiction was predicated upon diversity of citizenship); see also Myers v. Richland County, 288 F. Supp. 2d 1013, 1021 (D. N.D. 2003) ("Exemplary damages statutes provide a substantive right and therefore state law applies.").

For the purposes of punitive damages, the term "oppression" means "subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights." See North Dakota Pattern Jury Instructions C-72.10; see also Ingalls v. Paul Revere Life Ins. Co., 561 N.W.2d 273, 284-85

(N.D. 1997); Harwood State Bank v. Charon, 466 N.W.2d 601 (N.D. 1991); Napoleon Livestock Auction, Inc. v. Rohrich, 406 N.W.2d 346, 359 (N.D. 1987). "Actual malice" is defined as "an intent with ill will or wrongful motive to harass, annoy, or injure another person." See North Dakota Pattern Jury Instructions C-72.16; see also Ingalls v. Paul Revere Life Ins. Group, 561 N.W.2d 273 (N.D. 1997); McLean v. Kirby Co., 490 N.W.2d 229 (N.D. 1992); Stoner v. Nash Finch, Inc., 446 N.W.2d 747 (N.D. 1989).

> Actual malice is the actual state or condition of the mind of the person who did the act. Direct evidence of actual malice is not required. Rather, the character of the act itself, with its surrounding facts and circumstances, may be inquired into for the purpose of ascertaining the motive or purpose which influenced the mind of the party in committing the act. Thus, upon the consideration of these, if that motive is found to be improper and unjustifiable, the law authorizes the jury to find it was malicious.

Id. As a basis for awarding punitive damages, "fraud" is (1) the suggestion as fact of that which is not true by one who does not believe it to be true; (2) the assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true; (3) the suppression of a fact by one who is bound to disclose it, or who gives information that is likely to mislead because that fact was not communicated; or (4) a promise made without any intention of performing." See North Dakota Pattern Jury Instructions C-72.16; see also Dvorak v. American Family Mut. Ins. Co., 508 N.W.2d 329 (N.D. 1993); Dewey v. Lutz, 462 N.W.2d 435 (N.D. 1990); Olson v. Frasse, 421 N.W.2d 830 (N.D. 1988).

At this stage of the proceedings, the Court must determine whether Olson has demonstrated that there is a factual basis for a claim of punitive damages and whether there is sufficient evidence to support a finding by the trier of fact that a preponderance of the evidence proves oppression, fraud, or actual malice on the part of Ford Motor Company. Olson need not prove her claim at this

3

stage. To require so would usurp the fact-finding province of the jury and undermine the plaintiffs' right to a jury trial on the punitive damages claim.

In support of her request for punitive damages, Olson has alleged that Ford Motor Company (1) made several suggestions of fact which it knew were not true[1] and (2) suppressed from consumers facts of which it had knowledge.[2] Olson asserts that these action taken by Ford Motor Company were done to deceive owners of 1998 Ford Explores and the general public. Olson has presented evidence in the form of documents and excerpt of transcripts. Ford Motor Company asserts that many of Olson's assertions are (1) unrelated to the accident in this case and thus, inadmissible at trial or (2) an incorrect interpretation of the evidence.

Having reviewed the evidence submitted by the parties, the Court finds that there is sufficient evidence at this stage to support a finding by the trier of fact that a preponderance of the evidence establishes oppression, fraud, or actual malice. Admittedly, the plaintiffs have not provided concrete evidence that Ford Motor Company acted with oppression, fraud, or actual malice. However, the

---

[1] Olson asserts that Ford Motor Company falsely stated: (1) the only defective speed control cables were those installed on certain 1998 and 1999 Model Year Explorer/Mountaineer equipped with 4.0L OHV/SOHC or 5.0L engines and speed control built January 5, 1998, through March 4, 1999; (2) the speed control cable installed in Richard Olson's Explorer is not defective; (3) it is impossible for the speed control cable to become contaminated and bind in the open position; (4) the brakes will always overcome a stuck-open throttle with little effort; (5) the problem of unexpected acceleration has been taken care of promptly and completely by the manufacturers; (6) there are no known causes of unexpected acceleration/stuck-open throttle condition; (7) the speed control system installed in the Ford vehicles is not substantially similar throughout the company's product line; and (8) the 1998 Ford Explorer was reasonably safe for its intended use.

[2] Olson asserts that Ford Motor Company suppressed the following facts: (1) it is possible for the speed control cable installed in the 1998 Explorer to become contaminated and bind in the open position; (2) the speed control cable installed in the 1998 Explorer is defective; (3) the brakes will not always overcome a stuck-open throttle; (4) the speed control system installed in Ford vehicles is substantially similar throughout its product line; (5) Ford Motor Company did not thoroughly investigate the stuck-open throttle issue on the 1998 Explorer; (6) the partial recall of Explorer speed control cables did not completely solve the stuck-open throttle condition; (7) the company has received thousands of complaints of stuck-open throttle events in vehicles with substantially similar speed control cables; and (8) the potential failure modes for the Next Generation Speed Control System identified by its engineers were not entirely designed out, as was suggested by Ford Motor Company to the National Highway Transportation Safety Administration.

evidence presented to date arguably shows that (1) Ford's engineers were aware of a defective condition (throttle sticking or binding) that existed as revealed in the 1987 Failure Mode and Effects Analysis and the 1998 Ford Explorer manual; (2) the defective condition was not "designed out" and the speed control cable could stick with an open throttle to varying degrees; (3) Ford did not adopt the protective boot or grommet that would have arguably "designed out" the defective condition in the 1998 Ford Explorer; and (4) Ford was aware that dirt and debris inside a speed control cable could cause it to stick and that the application of the brakes when the speed control cable was stuck may not necessarily overcome a stuck-open throttle. Not surprisingly, the expert witnesses differ as to whether the speed control cable in Olson's Ford Explorer was stuck at the time of the accident which may have resulted in an unexpected acceleration of the vehicle. However, a reasonable jury could conclude from the evidence presented to date that Ford Motor Company acted with oppression, fraud or malice. Ford will have the opportunity at trial to attack the credibility of the Plaintiff's lay and expert witnesses and refute the evidence offered in support of an award of punitive damages. Whether Ford Motor Company's conduct was sufficiently egregious to merit an award of punitive damages is ultimately a question of fact for the jury to resolve at trial. At this stage of the proceedings is it appropriate to grant the moving party permission to amend the pleadings to assert a claim for punitive or exemplary damages.

This ruling does not necessarily mean that the punitive damage claim will reach the jury as the Court has utilized a bifurcated trial procedure for punitive damages as contemplated under Section 32-03.2-11(2) of the North Dakota Century Code, which provides as follows:

> If either party so elects, the trier of fact shall first determine whether compensatory damages are to be awarded before addressing any issues related to exemplary damages. Evidence relevant only to the claim for exemplary damages is not admissible in the proceeding on liability for compensatory damages. If an award of

compensatory damages has been made, the trier of fact shall determine whether exemplary damages are to be awarded.

In addition, this ruling should not be interpreted as a final decision on the admissibility of the evidence offered by either party in support of, or in opposition to, the motion to amend the complaint.

### III.  CONCLUSION

For the reasons set forth above, the Plaintiff's Motion for Leave to File Amended Complaint to Include Claim for Punitive Damages is **GRANTED.**  (Docket No. 41).  The Clerk of Court's Office is directed to file the Plaintiff's Second Amended Complaint and Jury Demand.  If the Plaintiff has not done so, the Plaintiff is directed to serve a copy of Second Amended Complaint and Jury Demand on the Defendants.

**IT IS SO ORDERED.**

Dated this 29th day of November, 2005.

_____
Daniel L. Hovland, Chief Judge
United States District Court