**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | |
|---|---|
| Diana Olson, on behalf of herself and her children as heirs at law of Richard Olson, deceased; and Diana Olson as Personal Representative of the Estate of Richard Olson,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>Ford Motor Company, a Corporation,<br><br>　　　　Defendant. | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 4:04-cv-102 |

Before the Court is defendant Ford Motor Company's Motion for Summary Judgment filed on November 16, 2005. For the following reasons, the Defendant's motion is denied.

**I.   BACKGROUND**

This dispute stems from a one-vehicle crash near Minot North Dakota, resulting in the death of Richard Olson on September 17, 2002. On August 20, 2004, the plaintiff, Diana Olson (Richard Olson's wife) filed a lawsuit on behalf of herself and her children alleging four claims: (1) strict products liability, (2) negligence, (3) failure to warn, and (4) breach of warranty.

The parties agree that the following facts are not in dispute. On September 17, 2002, Richard Olson played golf at the Minot Country Club and stayed through the evening to socialize. Although there is a dispute as to the amount of alcohol consumed and the time frame, it is undisputed that Olson drank an alcoholic beverage(s) at the country club. Shortly after 11:00 p.m., Olson left the parking lot of the country club alone in his 1998 Ford Explorer and drove down the country club's winding driveway. About a quarter of a mile from the clubhouse, the driveway curved to the right.

At this point, Richard Olson's vehicle went off the left side of the road sliding sideways, and the driver's door struck a tree. Richard Olson was killed. There were no witnesses to the crash. Sergeant Brad Smith of the North Dakota Highway Patrol calculated the vehicle was traveling at a speed of approximately 53 miles per hour at the time the tire marks on the road were made.

The plaintiff, Diana Olson, contends that a design defect in the Ford Explorer's speed control system (also referred to as the "cruise control system") caused the crash. However, Olson does not contend that the cruise control was engaged at the time of the crash. The plaintiff's investigator/accident reconstruction expert James Grinolds inspected the Ford Explorer after the crash. See Docket No. 59, Exhibit D, Transcript of James Grinolds, pp. 6-7.

The plaintiff's electrical engineering expert, Samuel J. Sero, has opined that Ford negligently designed the cruise control throttle cable (speed control actuator cable) and that the negligent design caused the crash. See Docket No. 59, Exhibit F, Expert Report of Samuel J. Sero, pp. 4-5. The speed control actuator cable is a metal cable that moves through a plastic sheath or housing. The cable connects to the cruise control motor at one end and to the throttle at the other end, and it opens and closes the throttle when the speed control is engaged. Sero opined that dirt or debris inside the housing around the cable caused the cable to stick or jam, holding the throttle open, even though the speed control (cruise control) was not engaged.

Ford's accident reconstruction expert, Ronald Woolley, determined that the crash happened about 1,400 feet (just over one-quarter mile) from the Minot Country Club's clubhouse. See Docket No. 59, Exhibit I, Woolley Accident Reconstruction Analysis, p. 3. Woolley ultimately concluded that the crash was the result of Richard Olson failing to negotiate the curve and allowing the left side tires to get off the paved roadway and slide down the grass-covered slope. See Docket No. 59,

Exhibit I, Woolley Affidavit, pp. 2-3 and Accident Reconstruction Analysis, p. 6. Ford's engineering expert, Charles Adam, inspected the vehicle and found the speed control cable moving freely, and his testing of the speed control system showed it was working normally. See Docket No. 59, Exhibit G, Expert Report of Charles Adams. According to Adams, "The speed control cable operated normally and exhibited no distress due to operation before the accident or as a result of this accident." Id. Ford's other engineering expert, Mark Hoffman, also inspected the vehicle and reached a similar conclusion: "There is no physical evidence available to me at this time that indicates there was any malfunction or abnormal behavior of the speed control system or throttle control system on Mr. Olson's vehicle that may have contributed to his accident." See Docket No. 59, Exhibit H, p. 3.

Ford seeks summary judgment and contends that Olson cannot establish causation, in that there is no evidence that the speed control cable in Olson's vehicle, whether it was defectively designed or not, caused his crash. Olson opposes the motion and contends there is sufficient evidence for a reasonable jury to conclude that Richard Olson's vehicle was defective, that Ford was negligent and strictly liable, and that such defect and negligence proximately caused Olson's fatal injuries.

## II. STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Graning v. Sherburne County, 172 F.3d 611, 614 (8th Cir. 1999). A fact is "material" if it might effect the outcome of the case and

a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376 (8th Cir. 1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed.R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III.   LEGAL DISCUSSION

This action is based on diversity jurisdiction, and thus, the Court will apply the substantive law of North Dakota. Paracelsus Healthcare Corp. v. Philips Med. Sys., 384 F.3d 492, 495 (8th Cir. 2004). The North Dakota Supreme Court has "recognized that negligence and strict liability in tort are separate and distinct theories of products liability and that each theory has a different focus." Oanes v. Westigo, Inc., 476 N.W.2d 248, 253 (N.D. 1991) (citing Butz v. Werner, 438 N.W.2d 509 (N.D. 1989); Mauch v. Mfrs. Sales & Services, Inc., 345 N.W.2d 338 (N.D. 1984); Day v. General Motors Corp., 345 N.W.2d 349 (N.D. 1984)). Strict liability focuses on whether a product is defective and unreasonably dangerous, whereas negligence focuses on whether the manufacturer's

conduct falls below the standard of reasonable care. Crowston v. Goodyear Tire & Rubber Co., 521 N.W.2d 401, 406 (N.D. 1994). However, under either theory, the plaintiff has the burden of demonstrating causation. See Investors Real Estate Trust Properties, Inc. v. Terra Pacific Midwest, Inc., 686 N.W.2d 140, 144 (N.D. 2004) (holding that in any negligence action the plaintiff has the burden of demonstrating (1) a duty, (2) a breach of that duty, (3) causation, and (4) damages); Enderson v. Scheels Hardware and Sports Shop, Inc., 560 N.W.2d 225, 228 (N.D. 1997) (citing Kaufman v. Meditec, Inc., N.W.2d 297, 300 (N.D. 1984)) (holding that in order to recover for injuries sustained as a result of a defective condition in a product, unreasonably dangerous to a consumer, the plaintiff must show by a preponderance of the evidence the product was defective in design or manufacture; the defect rendered the product unreasonably dangerous to the consumer; the defect existed when the product left the manufacturer; and the defect was a proximate cause of the plaintiff's injuries). It is well-established that ngligence actions are ordinarily inappropriate for summary judgment. Gullickson v. Torkelson Bros., Inc., 598 N.W.2d 503 (N.D. 1999).

In establishing causation, "a plaintiff must present affirmative evidence of proximate cause, and may not establish causation solely by discrediting other possible causes." Investors Real Estate Trust Properties, Inc. v. Terra Pacific Midwest, Inc., 686 N.W.2d 140, 144 (N.D. 2004). Causation also cannot be based upon mere speculation. Id.

> If from the plaintiff's evidence it is as probable that the injury and damage of which the plaintiff complains resulted from a cause for which the defendant is not responsible as it is that such injury and damage resulted from a cause for which the defendant would be responsible, a prima-facie case of proximate cause has not been made and the plaintiff cannot recover, since plaintiff's recovery must be based upon more than mere speculation.

Bismarck Baptist Church v. Wiedemann Indus., Inc., 201 N.W.2d 434, 441 (N.D. 1982).

Ford asserts that Olson has failed to produce any evidence establishing a causal relationship between the Ford Explorer's speed control system and the crash. Ford contends that Olson's experts' claim that the design of the speed control cable <u>could</u> allow dirt or debris to make the cable stick, but that Olson has not presented any evidence to demonstrate that the speed control cable on Olson's Explorer actually <u>did</u> stick at the time of his crash. Ford also contends that Olson cannot exclude equally reasonable inferences of other possible causes of the crash for which Ford is not responsible, such as driver fatigue, distraction, or error, and cites to the case of <u>Olson v. Arctic Enterprises, Inc.</u>, 349 F. Supp. 761 (D. N.D. 1972).

Olson responds by asserting that the evidence is sufficient for a jury to return a verdict in her favor. Olson notes that the inspector/accident reconstruction expert, James Grinolds, found evidence of a bent brake pedal, damaged brake pedal foot pad, and other physical evidence surrounding the crash which led him to believe that some condition in the Ford Explorer had caused the crash. <u>See</u> Docket No. 66, Exhibit 7, Deposition of James Grinolds, pp. 26-32. Olson also points to the report of electrical engineering expert, Samuel J. Sero, wherein Sero concludes:

> based on material reviewed to date and within a reasonable degree of engineering certainty, that the cause of this accident was the negligent design of the cruise control throttle cable. This design did not incorporate any of the simplistic and known to Ford mechanism for prohibiting contaminant intrusion.

<u>See</u> Docket No. 59, Exhibit F, pp. 4-5; <u>see also</u>, Docket No. 66, Exhibit 3, Deposition of Samuel J. Sero, pp. 89-90. Sero also conducted a borescope exam of the cable which revealed

> particulate inside the housing . . . as well as some nicks and gouges that are in it . . . . The debris that was on it is of a granular consistency capable of forming also a binding mechanism. So all of the aspects were there for it to bind, and it indicated braking was being done to stop the vehicle.

<u>See</u> Docket No. 66, Exhibit 3, Deposition of Samuel J. Sero, p. 19.

6

The Court has carefully reviewed the entire record, including the numerous affidavits, depositions, and exhibits submitted by the parties. When the evidence is viewed in a light most favorable to Olson, the Court finds that there are genuine issues of material fact that require submission of such claims to a jury. It is clear from the record that the expert witnesses retained by either party have reached contrary conclusions regarding the cause of the crash. There are genuine issues of material fact in dispute, and facts from which a jury could reasonably find for the mon-moving party based on the direct and circumstantial evidence presented.

In regard to Ford's reliance on Olson v. Arctic Enterprises, Inc., 349 F. Supp. 761 (D. N.D. 1972), the Court agrees that Olson stands for the proposition that when the probabilities are equal that a crash may have resulted from two different causes, a verdict in favor of the plaintiff cannot be upheld. However, the Court does not find the Olson case persuasive in this context. The order in Olson was entered after a court-trial on the merits. Thus, any findings of fact were made with the benefit of hearing each party present its evidence and cross-examine witnesses. The Court finds that the differences in the procedural histories of the Olson case and the current dispute lessens the persuasive value of Olson V. Arctic Enterprises, Inc..

The evidence submitted by Olson through expert witnesses Sero and Grinolds is sufficient evidence to raise a genuine issue of material fact as to proximate cause at this stage of the litigation. The expert witnesses opinions are not based on mere speculation. Thus, a reasonable jury could rely upon such direct and circumstantial evidence to reach the conclusion that the alleged design defects were the proximate cause of the crash. The physical evidence, when viewed in a light most favorable to the plaintiff, arguably shows brake pedal bending and damage to the foot pad on the brake consistent with hard braking by Olson; there is direct and circumstantial evidence of

particulate contamination within the speed control cable sufficient to cause sticking or binding of the cable; and the physical evidence discloses gouges on the cable and housing which arguably shows that particulate contamination had occurred and had caused interference with the operation of the cable.

At trial, the opinions of each party's expert witnesses will be subject to vigorous cross-examination and the presentation of contrary evidence. It is within the province of the jury, not the Court, to decide issues of credibility and to determine the weight to be accorded such evidence. The Court finds that the expert witnesses' differing opinions on the issue of causation are sufficient at this stage to create a genuine issue of material fact and render summary judgment inappropriate.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's Motion for Summary Judgment (Docket No. 57).

**IT IS SO ORDERED.**

Dated this 6th day of January, 2006.

_____
Daniel L. Hovland, Chief Judge
United States District Court