**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Diana Olson, on behalf of herself and her children as heirs at law of Richard Olson, deceased; and Diana Olson as Personal Representative of the Estate of Richard Olson, | ) ) ) ) ) ) | **ORDER GRANTING DEFENDANT'S MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE OF IRRELEVANT PRODUCT RECALLS** |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Ford Motor Company, a Corporation, | ) ) | Case No. 4:04-cv-102 |
| Defendant. | ) | |

Before the Court is the "Defendant's Motion in Limine No. 3 to Exclude Evidence of Irrelevant Product Recalls," filed on January 6, 2006. For the reasons set forth below, the Court grants the motion.

**I.   BACKGROUND**

The defendant, Ford Motor Company (Ford), requests an order (1) excluding from evidence all recalls for any Ford vehicle, including, but not limited to the 1998 Ford Explorer; (2) precluding plaintiff and her counsel and witnesses from referring directly or indirectly to any recalls; and (3) directing plaintiff's counsel to inform his client and witnesses of this order and its prohibitions. The plaintiff, Diana Olson, responds that evidence of three of the recalls is relevant and probative of the consequences of a stuck speed control cable.

1

Olson intends to introduce evidence of recalls pertaining to certain Ford vehicles including the following recalls, as described by Ford:

<u>Ford Recall 97S65</u>:  This recall addressed an issue with water freezing in the speed control cables of some 1991-1996 Taurus/Sable and 1991-1994 Lincoln Continental vehicles.  This recall did not apply to Explorers.

<u>Ford Recall 99S09</u>:  This recall addressed a manufacturing flaw in some speed control cables manufactured by Dura, a supplier, during a specific time frame.  The flaw could allow part of the cable to interfere with the speed control servo pulley while the speed control was in operation and prevent the throttle from closing when the speed control was disengaged.  This recall did apply to some Explorers, but it did not apply to the Olson Explorer.

<u>Ford Recall 00V422000</u>:  This recall addressed throttle body sticking due to reduced clearance between the plate and the bore in certain throttle bodies.  This recall did apply to the Olson Explorer, but the Olson's Explorer had the affected throttle body replaced with a properly manufactured one before the time of the accident.

<u>Ford Recall 03S03</u>:  This recall addressed a manufacturing flaw in some cables in which flared/split strand covers could cause binding in the cable.  This recall did apply to some Explorers, but it did not apply to the Olson Explorer.

Ford argues that because the recalls detailed above did not involve dirt or debris causing the speed control cables to stick or jam, the recalls are irrelevant and inadmissible.  Ford also argues that even if the recall were deemed relevant, their probative value is far outweighed by the danger of unfair prejudice.  Olson asserts that three of the recalls are probative of the general issue of showing the consequences of a stuck cable and Ford's knowledge that the brakes were insufficient to overcome a stuck throttle.

**II.     LEGAL DISCUSSION**

Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probably than it would be without the evidence." Even if evidence is relevant, it may still be excluded under Rule 403 of the Federal Rules of Evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The district court has broad discretion in deciding whether to admit evidence at trial. Fortune Funding, LLC v. Ceridian Corp., 368 F.3d 985, 990 (8th Cir. 2004).

There is little Eighth Circuit case law on the issue of the relevancy of recalls. In Bizzle v. McKesson Corp., 961 F.2d 719, 721 (8th Cir. 1992), the Eighth Circuit held that evidence of a subsequent recall was inadmissible when there was insufficient evidence of prove that the product (a cane) was the same model as the recalled model. In Lewy v. Remington Arms Co., Inc., 836 F.2d 1104, 1109 (8th Cir. 1988), the Eighth Circuit held evidence of a recall involving a different model firearm was inadmissible in a products liability case because the component parts of the firearms were of a different shape and dimension. In addition, the Eighth Circuit opined that the recall's minimal probative value was easily outweighed by the dangers of unfair prejudice and of misleading the jury. Id.

Other courts have also held that recalls arising out of unrelated defects are irrelevant and inadmissible. See Kane v. Ford Motor Co., 451 F.2d 315, 316 (3d Cir. 1971)(affirming exclusion of service letter describing defect not alleged by plaintiff); Jordan v. General Motors Corp., 624 F. Supp. 72, 77 (E.D. La 1985)(excluding evidence of recall involving different model year and

different defect). However, when a recall is shown to pertain to the same defect alleged, even though it may be a different model or product, the Eleventh Circuit has held that evidence of the recall is admissible. See Hessen for Use and Benefit of Allstate Inc. Co. v. Jaguar Cars Inc., 915 F.2d 641, 649 (11th Cir. 1990) (recall evidence relevant only if the alleged defect was the same defect involved in the recall). At least one court has held that even when the alleged defect is the same, if it occurred in a different product, evidence of the recall should be excluded. Verzwyvelt v. St. Paul Fire & Marine Ins. Co., 175 F. Supp. 2d 881, 888-89 (W.D. La. 2001) (holding evidence of listeria contamination in one food product irrelevant to existence in different food product at different plant).

### A. RECALL 97S65

This recall addressed an issue with water freezing in the speed control cables of some 1991-1996 Taurus/Sable and 1991-1994 Lincoln Continental vehicles. This recall did not apply to Explorers. To address the water freezing issue in these vehicles, Ford developed an umbrella-style cable for future production and a pull-on collapsing boot as a fix for vehicles already in existence.

Ford contends that the only connection between recall 97S65 and this case, is the testimony of Sam Sero, plaintiff's expert witness. Sero opines that if water could get into the recalled cable, dirt and debris could get into the Olson cable. Ford asserts that Sero is wrong because the cables in the recalled group were routed upward and Explorers have cables which are routed downward. Ford argues that the laws of physics prove Sero incorrect – i.e., water can run down into an upward-mounted cable, but water cannot run up into a downward-mounted cable. Ford notes that Sero had not considered or was not aware of the difference in the routing of the speed control cables in the different models of vehicles and has acknowledged that ice in the cable could not have been the

cause of Olson's accident, given the temperature at the time of the accident. See Docket No. 84, Exhibit D, Deposition of Samuel J. Sero, pp. 37, 40-41. Ford also contends that any discussion of the "pull-on collapsing boot" must also be excluded as irrelevant.

Olson asserts that a "frozen cable equals a dirt-bound cable" in terms of it resulting in an open throttle. Olson contends these two situations are not only substantially similar, but virtually identical. Olson further asserts that Recall 97S65 is highly probative of the consequences of a stuck cable, and the fact that brakes will not always overcome a throttle held open by a stuck speed control cable.

It is undisputed that Recall 97S65 did not apply to the Olson Ford Explorer or to any Ford Explorer. Recall 97S65 involved different models of vehicles with speed control cables routed differently than a 1998 Ford Explorer. In addition, the recall addressed the problem of water freezing in the speed control cable, not the accumulation of dirt and debris. The Court finds that the differences in models of vehicles, the routing of the cables, and the purpose of the recall makes Recall 97S65 irrelevant to the current case. Evidence of Recall 97S65 would not tend to show that the Olson's Ford Explorer was defective. The Court further finds that even if evidence of Recall 97S65 would be deemed relevant, the Court would exclude such evidence under Rule 403 because its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading of the jury, and undue delay and waste of time.

### B.   **FORD RECALL 99S09**

This recall addressed a manufacturing flaw in some speed control cables manufactured by Dura, a supplier, during a specific time frame. The flaw could allow part of the cable to interfere

5

with the speed control servo pulley while the speed control was in operation and prevent the throttle from closing or returning to idle when the speed control was disengaged. This recall did apply to some Explorers, but it did not apply to the Olson Explorer. According to Ford, a stuck throttle could result if the speed control was used and the condition was present, but the recall clearly stated that the condition would not occur if the speed control was not used.

Ford asserts that the problem leading to this recall was a manufacturing flaw in the cables. Ford points to the testimony of Sero, who admitted he found no evidence that a manufacturing flaw in the cable was the cause of Olson's accident. See Docket No. 84, Exhibit D, Deposition of Samuel J. Sero, pp. 35-36. As a result, Ford asserts that evidence of this recall, and references to it by former Ford employee Casey Mulder in e-mail correspondence, is irrelevant and inadmissible.

Olson advances a similar argument in regard to this recall. Olson asserts that a "pulley-bound cable equals a dirt-bound cable" in terms of effect. Just as before, Olson contends that such evidence is probative in terms of the consequences of a stuck cable.

It is undisputed that Recall 99S09 did not apply to the Ford Explorer involved in this accident. The recall was issued to address a manufacturing flaw in a component part by a specific manufacturer during a specific time frame. The Courts finds that Recall 99S09 is irrelevant to the current case. Olson is alleging a design defect in the speed control system – not a manufacturing defect by Ford or one of its suppliers. The Court finds that evidence of Recall 99S09, or the e-mail correspondence of Casey Mulder pertaining to Recall 99S09, would not tend to prove the existence of a defect in Olson's Ford Explorer. The Court further finds that even if evidence of Recall 99S09 would be deemed relevant, the Court would exclude such evidence under Rule 403 because its

probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading of the jury, and undue delay and waste of time.

### C. FORD RECALL 00V422000

This recall addressed throttle body sticking due to reduced clearance between the plate and the bore in certain throttle bodies. On the initial application of the accelerator pedal after the engine has cooled, the driver would need to apply additional force to the pedal to break the throttle plate loose. This recall did apply to the Olson Explorer. An automobile dealer, Magic Motors, found this condition on the Olson vehicle and had it repaired before it was sold to Olson. The throttle body was replaced with a properly manufactured one by Westlie Motors.

Ford again points to the testimony of Sero who acknowledged that this recall condition was not the cause of Olson's accident. See Docket No. 84, Exhibit D, Deposition of Samuel J. Sero, pp. 43-44. Thus, Ford asserts that this recall, even though it did apply to the Olson vehicle, is irrelevant and inadmissible. In her response, Olson has stipulated that she does not intend to offer evidence in regard to Recall 00V422000.

The parties agrees Recall 00V422000 applied to the Olson Ford Explorer, and it is undisputed that the throttle body in Olson Ford Explorer was replaced before Olson purchased the vehicle. Even if Olson had not stipulated to the exclusion of this evidence, nothing about Recall 00V422000 would tend to prove the Olson's Ford Explorer was defective. The Court finds that evidence of Recall 00V422000 is inadmissible at trial.

### D.     FORD RECALL 03S03

This recall addressed a manufacturing flaw in some cables in which the cable's plastic end cover could be flared or split potentially leading to a binding in the cable. This recall did apply to some Explorers, but it did not apply to the Olson Explorer.

Ford acknowledges that Sero claims a piece broke off this part of the cable in the Olson vehicle, but Ford asserts there is no evidence to show the cable in the Olson vehicle suffered from this manufacturing flaw. As a result, Ford contends that this recall is irrelevant and inadmissible.

Olson contends that a "plastic-particle-bound cable equals a dirt-bound cable" in terms of its effect. Again, Olson asserts that such evidence is highly probative of the consequences of a stuck cable.

Again, it is undisputed that this recall did not apply to the Olson Ford Explorer. Although Olson's expert witness Sero claims a piece of this cover broke-off the Olson's Explorer, there is no evidence to suggest this was a result of a manufacturing flaw, much less the same manufacturing flaw that was the subject of Recall 03S03. Thus, the Court finds that evidence of Recall 03S03 would not tend to prove the Olson's Ford Explorer was defective. The Court further finds that even if evidence of Recall 03S03 would be deemed relevant, the Court would exclude such evidence under Rule 403 because its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading of the jury, and undue delay and waste of time.

### E.     RULE 403

Finally, Ford asserts that even if the recalls could be considered relevant, the recalls should still be inadmissible under Rule 403. Ford contends that the only probative value of the recall

evidence would be to imply that the speed control cable in the Olson's Ford Explorer was defective because other speed control cables in other vehicles many have been manufactured with a flaw or had conditions that had to be remedied. Ford also contends that evidence of unrelated recalls would confuse the issues, mislead the jury, and waste time. On the other hand, Olson asserts that evidence of the recalls is probative to show the consequences of a stuck cable. Olson also contends that evidence of the recall is relevant to contradict Ford's assertions that the brakes will always overcome a stuck throttle.

Even if the Court were to conclude that any of the recall evidence was relevant, the Court finds that its limited probative value would by substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading of the jury, and by considerations of undue delay and waste of time. If the Court were to allow Olson to present evidence of the recalls, Ford would undoubtedly attempt to distinguish the recalls by offering evidence of their purpose, context, and resolution. Such presentations would lead the jury far astray of the allegations in this lawsuit – namely that the Olson Ford Explorer was defective – and would mire the parties, the jury, and the Court in discussions of the possible defects in other Ford vehicles. More important, evidence of the recalls could mislead a jury to conclude that simply because the speed control cables in some Ford vehicles have been the subject of recalls, the Olson Ford Explorer was likewise defective.

### III.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Defendant's Motion in Limine No. 3 to Exclude Evidence of Irrelevant Product Recalls. (Docket No. 75). The plaintiff is prohibited

from referring directly or indirectly to any of the recalls.  The Court directs plaintiff's counsel to inform his client and witnesses of this order and its prohibitions.

**IT IS SO ORDERED.**

Dated this 25th day of January, 2006.

_____
Daniel L. Hovland, Chief Judge
United States District Court