**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Diana Olson, on behalf of herself and her children as heirs at law of Richard Olson, deceased; and Diana Olson as Personal Representative of the Estate of Richard Olson, | ) ) ) ) ) ) | **ORDER GRANTING, IN PART, DEFENDANT'S MOTION IN LIMINE NO. 1 TO EXCLUDE OTHER INCIDENTS WITHOUT A PRIOR SHOWING OF SUBSTANTIAL SIMILARITY** |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Ford Motor Company, a Corporation, | ) ) | Case No. 4:04-cv-102 |
| Defendant. | ) | |

Before the Court is the "Defendant's Motion in Limine No. 1 to Exclude Other Incidents Without a Prior Showing of Substantial Similarity," filed on January 9, 2006. The Plaintiff filed a response opposing the motion on January 18, 2006. For the reasons set forth below, the motion is granted, in part.

I.      **BACKGROUND**

The defendant, Ford Motor Company (Ford), requests an order prohibiting at trial the introduction of evidence, testimony, references, and arguments of specific reports, descriptions, claims or lawsuits concerning accidents or incidents of alleged sudden, unwanted or unexpected acceleration or failure to decelerate, including allegations of binding, sticking or jamming of the speed control cable. Ford asserts that such evidence must be excluded unless the plaintiff, Diana Olson (Olson), can show that any such other incident (1) is not hearsay, (2) is relevant because it involved a speed control cable that was found upon inspection to be stuck by dirt or debris, (3)

involves a vehicle, component, and factual circumstances which are substantially similar to plaintiff's vehicle and its components and the facts of the Olson accident, and (4) the probative value is not substantially outweighed by the potential for undue prejudice, confusion of the issues and waste of time under Rule 403.  Olson asserts that evidence of other incidents is admissible to show brake ineffectiveness, negligence, causation and notice, as well as for purposes of impeachment, rebuttal, and to establish punitive damages.

The evidence that Ford anticipates Olson will offer falls into three broad categories:  (1) documents concerning incidents reported to Ford, (2) statistical data, and (3) testimony of other drivers who have been involved in sudden acceleration incidents.  The Court will address each in turn.

II.    **LEGAL DISCUSSION**

A.    **DOCUMENTS REPORTING OTHER INCIDENTS TO FORD & THE NHTSA (CUSTOMER COMPLAINTS)**

Ford and the National Highway Traffic Safety Administration (NHTSA) have collected documents concerning incidents reported to them from drivers, investigators, and dealers, as well as summaries prepared of information reported by others.  Ford, in conjunction with this case and others, has compiled extensive documentation of customer contacts through various sources, customer complaints, warranty records, claims, and lawsuits alleging incidents of sudden acceleration.  For simplicity sake, the Court will refer to all such evidence as customer complaints. Ford asserts that most of these documents are hearsay and, as a result, they should be excluded pursuant to Rule 801 of the Federal Rules of Evidence.

2

Ford contends that every customer complaint regarding other alleged incidents is based on an out-of-court statement by an individual that their car accelerated or failed to decelerate and that applying the brakes would not stop it. Ford contends that the only possible purpose for offering reports of other incidents is to prove the truth of the information contained in them – that these incidents happened as reported. Thus, Ford contends that such statement must be excluded as hearsay.

Ford also asserts that none of the exceptions to the hearsay rule apply. Ford argues that Olson cannot avoid the hearsay rule simply by claiming evidence of other incidents are offered only for "notice" of a defect. Ford contends that the reports could only be notice to Ford of a defect if there was an actual finding of a cable stuck by dirt or debris and if the reports were true. Ford further contends that the reports could not be offered as impeachment under Rule 804(b) because Ford merely received the reports and did not take a position that could be contradicted. Finally, Ford contends the reports would not be admissible as records of regularly conducted business activities under Rule 803(6) of the Federal Rules of Evidence, or public records and reports under Rule 803(8) of the Federal Rules of Evidence, because of the hearsay included in each report.

On the other hand, Olson contends that the customer complaints are not hearsay because they would be offered for purposes other than the truth of the matter asserted, such as (1) to show brake ineffectiveness and refute Ford's assertion that the brakes will always overcome an open throttle, (2) to show Ford was aware that a stuck-throttle condition is a dangerous and potentially life-threatening condition and that Ford has notice of the existence of a dangerous condition, (3) to show Ford was negligent in failing to investigate the reports, (4) to impeach Ford's witnesses on the issue of the braking ability in a stuck-open throttle condition or to provide rebuttal evidence, (5) to show

that the Ford vehicles involved acted in a similar way which implicates a defective condition, and

(6) to support her punitive damages claim.  Olson contends that use of the customer complaints for

such purposes does not violate Rule 801.

Olson anticipates that her engineering expert, Samuel Sero, will testify he has analyzed a

multitude of reports of other events he deems to be substantially similar to this case.  Olson set forth

a lengthy recitation of what testimony Sero is expected to provide, much of which includes a

reference or reliance on the customer complaints:

> (4) in the course of [his] investigations of this and other speed control systems
> failures, he had been provided with documentation of hundreds of other incidents of
> failures, or alleged or suspected failures, of the Next Generation Speed Control
> System in Ford vehicles;
>
> . . .
>
> (6) in the course of his investigation and analysis of the Olson accident, [he] found
> it useful to examine reports of other incidents which are substantially similar to this
> occurrence; and in determining substantial similarity, he considers, the following to
> be relevant:
>> a.    The system is a Next Generation system in a Ford vehicle;
>> b.    The actuator cable is substantially similar in its construction
>>       and operation to that found in the 1998 Ford Explorer;
>> c.    The vehicle was in motion;
>> d.    The driver action was to apply the brake; and
>> e.    The vehicle did not decelerate or slow down following such
>>       action, requiring heavy braking and/or turning off the ignition
>>       switch.
> Sero Affidavit, at Tab 2;
>
> (7) in the course of his investigation and analysis of the Olson accident, [he] has been
> provided with and has examined reports of other incidents which, on their face, are
> substantially similar to the Olson occurrence;
>
> . . .
>
> (9) it is his opinion that each of the foregoing incident reports sets forth
> circumstances which are, on their face, substantially similar in terms of the

4

manifestations of the same defect which, in [his] opinion, was the proximate cause
of the Olson accident.

See Plaintiff's Opposition to Defendant's First Motion in Limine No. 1 Seeking to Exclude Evidence

of Other Similar Incidents (Docket No. 103).  Olson also sets forth a laundry list of details she

asserts are substantially similar between the Olson accident and the other incidents reported in the

customer complaints.[1]

---

[1]Olson asserts that all the other incidents share the following elements:  (1) All vehicles were designed,
manufactured, and sold by Ford Motor Company; (2) All vehicles were equipped with the Next Generation Speed
Control System.  (Ford's 30(b)7 witness, Chuck Adams, testified that the Next Generation Speed Control System is
substantially similar throughout all Ford products across North America); (3) All vehicles were manufactured within
4 years of one another; (4) The Next Generation Speed Control System, irrespective of the Ford make or model in
which it is installed, has the potential failure mode for a sticking or binding actuator cable, which can result in a
stuck-open throttle.  A stuck-open throttle actuator cable has the same effect in each case, regardless of model or
year of vehicle; (5) Service manuals for the vehicles employing the Next Generation Speed Control System indicate
the potential for a sticking or binding actuator cable and direct the same inspection and solution for the problem; (6)
All cables are of the same base part number, 9A825; (7) All cables have the same basic design; (8) All cables are
subjected to the same engine compartment contaminants; (9) All vehicles are equipped with accelerator cables,
running parallel to the actuator cable in proximity to the throttle body, that have either a wiper cap or a snout at the
very point on the cable that is adjacent to that point on the actuator cable that plaintiffs are saying is poorly protected
against contamination.  The presence of these protective devices shows Ford's knowledge that the throttle linkage on
each and every one of these "other vehicles" is, regardless of cable routing, subjected to an environment of
contamination that is at least harsh enough on the accelerator cables in these vehicles to required a device that wipes
clean the cable where it enters its conduit; (10) All vehicles require equivalent braking forces, within 1 or 2 pounds,
to bring vehicle to a stop; (11) All are produced for everyday driving by a broad range of drivers; (12) All incidents
took place within the continental U.S.; (13) All drivers were licensed adults; (14) All drivers had been driving for
more than ten years prior to their respective accidents; (15) All drivers were driving within recommended speed
limits prior to a malfunction in their vehicle; (16) All incidents occurred under dry, normal road conditions; (17) All
incidents occurred at highway speeds, between 25-75 m.p.h.; (18) All incidents fall into Ford's own "Group III"
category of unexplained acceleration.  When Ford's engineers did their own investigation into this condition, they
did not differentiate among vehicles and/or actuator cables; (19) All reports indicate full force being applied to the
brake pedal; (20) Ford assumes driver error to be the cause in all of these incidents; (21) Contrary to Ford's position,
expert testimony, and the testimony of Ford engineers, all drivers assert that their brakes were ineffective in slowing
their vehicle.  (Impeachment and/or Rebuttal of Ford's witnesses and goes to Punitive Damages); (22) All drivers
claim that their brakes were inadequate during the event; (23) All drivers were put into similarly dangerous
situations as a result of their stuck-open throttle condition; (24) All drivers filed complaints with Ford Motor
Company and/or the NHTSA, and Ford Motor Company received notice of each; (25) Contrary to Ford engineer
Perkin's testimony that it is Ford's policy always to want to thoroughly investigate this very type of incident, Ford
did not send anyone to inspect and/or investigate any of these incidents to ascertain causation.  (shows Negligence
and goes to Punitive Damages); (26) Many drivers received the same form letter in response to their complaint; (27)
Ford challenged each of these drivers to *prove* a defect in their vehicle; (28) The fact that Ford did not buy back any
of these vehicles for investigation indicates that the company had come to a conclusion as to the cause of the
incident.  Without having investigated the vehicle, Ford could only come to the conclusion that it was driver
error. (shows contrary Causation Theory); (29) Ford did not believe that the driver's description experience was
factual, even though Ford did not conduct its own investigation of the circumstances or inspect the speed control
system which was installed on the vehicle; (30) All drivers stood implicitly accused of driver error due to Ford's

Finally, Olson contends that the evidence is admissible pursuant to Rule 404(b) of the Federal Rules of Evidence, in that it is evidence of other crimes, wrongs, or acts.

### 1)  <u>RULE 404(B)</u>

As to Olson's assertion that the customer complaints are admissible pursuant to Rule 404(b), the Court finds this rule inapplicable.  Rule 404(b) provides, in part, as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Olson has not cited to any legal authority to support her novel proposition that customer complaints are in some fashion "crimes, wrongs, or acts" by Ford or otherwise admissible character evidence.  As a result, the Court finds that Rule 404(b) does not govern the admissibility of the customer complaints.

### 2)  <u>RULE 801</u>

Rule 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed.

---

refusal to accept responsibility; (31) None of these drivers was ever warned of a potential for a stuck actuator cable. (shows Failure to Warn); (32) As evidenced by their testimony, Ford's experts and engineers are unable to rule out stuck actuator cables as a potential cause of any of these incidents; (33) None of Fords, experts or engineers who will testify in this trial was ever made aware by Ford of these complaints prior to submitting either their expert opinion and/or their testimony; and (34) All of the drivers of these other vehicles have offered their testimony in the interest of public safety and have nothing to gain by having their voices heard.  <u>See</u> Docket No. 103 (footnotes omitted).

R. Evid. 801(c).  The purpose of the hearsay rule is to exclude declarations whose veracity cannot be tested by cross-examination.  United States v. Singer, 687 F.2d 1135, 1147(8th Cir. 1982).

The Eighth Circuit case law provides minimal guidance on the admissibility of customer complaints during a plaintiff's case-in-chief in a products liability action.  See Peterson v. General Motors Corp., 904 F.2d 436, 439 (8th Cir. 1990) (affirming without discussion a district court's decision to exclude evidence of customer complaints in a sudden acceleration products liability action); Lewy v. Remington Arms Co., Inc., 836 F.2d 1104, 1106 (8th Cir. 1988) (affirming award of punitive damages based, in part, on customer complaints).  While the Lewy case held that customer complaints, in addition to other evidence, supported an award of punitive damages, the case did not detail whether the trial was bifurcated and for what purposes the customer complaints were admitted.  Neither of the Eighth Circuit cases addressed the issue of whether customer complaints are inadmissible hearsay.

Other jurisdictions have held that customer complaints, letters, or reports are generally not admissible because they constitute hearsay.  See Guild v. General Motors Corp., 53 F. Supp. 2d 363, 368 (W.D. N.Y. 1999); Peters v. Johnson & Johnson Prods. Inc., 783 S.W. 2d 442, 444-45 (Mo. Ct. App. 1990); Babb v. Ford Motor Co., Inc., 535 N.E. 2d 676,  679-80 (Ohio Ct. App. 1987); Nissan Motor Co., v. Armstrong, 145 S.W. 3d 131, 140 (Tex. 2004).  The Supreme Court of Texas recently summarized the reasoning behind excluding customer complaint letters.

> Complaint letters in a manufacturer's files may be true, but they also may be accusatory and selfserving; they are rarely under oath and never subject to cross-examination.  As they are necessarily out-of-court statements, they are hearsay if offered to prove the truth of the assertions therein – that the incidents complained of occurred as reported.  While a compilation of such complaints by a manufacturer might constitute a business record that such claims were (or were not) received, they could not be a business record that such claims are true unless the employee making the record has personal knowledge of each.  Thus, consumer complaints in a

company's file are generally hearsay within hearsay, and require their own exception in addition to that for business records generally.

Nissan Motor Co., v. Armstrong, 145 S.W.3d 131, 140 (Tex. 2004) (footnotes omitted).  The Court finds this portion of the Armstrong case persuasive.


      **a.**    **USE OF CUSTOMER COMPLAINTS TO SHOW BRAKE INEFFECTIVENESS, RELATIVE DANGEROUSNESS OF CONDITION, NEGLIGENCE, AND/OR DEFECTIVE CONDITION**

The Court finds that customer complaints, whether contained in Ford's business records or compiled by another party, all constitute hearsay.  There is no question that the customer complaints are out-of-court statements.  Although Olson asserts she will offer the customer complaints for reasons other than for the truth of the matters asserted in the complaints, the Court finds that many of Olson's purported purposes for offering the customer complaints hinge on the underlying truth of the complaints.  Olson contends she would offer the customer complaints to show brake ineffectiveness, relative dangerousness of condition, negligence, and defective condition.  In each of these instances, Olson is relying on the truth of the underlying assertions in the customer complaints (i.e., that the brakes failed, the cable stuck, and the drivers were put in a life-threatening situation).  If a customer's complaint that the brakes in their Ford vehicle failed to overcome a stuck throttle is a complete fabrication or a self-serving exaggeration, the customer complaint would clearly not tend to establish that the brakes were ineffective, that the condition of the vehicle was dangerous, that Ford was negligent, or that a defective condition existed.  Thus, regardless of how the evidence is characterized, the customer complaints would be offered for the truth of the matters asserted therein.  The Court finds that the use of customer complaints for these purposes constitutes inadmissible hearsay.  As a result, Olson will be precluded from introducing or making reference

to customer complaints or reports during voir dire, opening statements, and in her case-in-chief to prove brake ineffectiveness, relative dangerousness of condition, negligence, and/or a defective condition.

### b.   USE OF CUSTOMER COMPLAINTS TO SHOW NOTICE

As to Ford's assertion that evidence of customer complaints cannot be offered to show notice, the Court finds that this argument must fail.  Such evidence does not run afoul of Rule 801(c) because such evidence is not offered for the truth of the matter asserted and is therefore not hearsay. See Guild v. General Motors Corp., 53 F. Supp. 2d 363, 368 (W.D. N.Y. 1999) (holding evidence of customer complaints was inadmissible to show a defect, but was admissible to show notice assuming a proper foundation is established and assuming the defendant contested the issue of notice).

It is well-established that "[e]vidence of similar incidents may be relevant to prove the defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation."  Lovett v. Union Pacific Railroad Co., 201 F.3d 1074, 1081 (8th Cir. 2000).  Evidence that a manufacturer received customer complaints about a particular defect is admissible to show knowledge or notice on the part of the manufacturer.  See Lewy v. Remington Arms Co., Inc., 836 F.2d 1104, 1108-09 (8th Cir. 1988)(evidence of customer complaints was relevant to the issue of whether the manufacturer had notice); see also First Security Bank v. Union Pacific Railroad Co., 152 F.3d 877, 879 (8th Cir. 1998)(evidence of other accidents may be relevant to prove notice of the existence of defects).

"However, admitting similar-incident evidence . . . threatens to raise extraneous controversial issues, confuse the issues, and be more prejudicial than probative." Id.

In order for similar-incident evidence to be admissible it must be "substantially similar" to the case at bar. Id.; see Hale v. Firestone Tire & Rubber Co., 756 F.2d 1322, 13332 (8th Cir. 1985) ("Evidence of prior accidents is admissible only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar."); Crowston v. Goodyear Tire & Rubber Co., 521 N.W.2d 401, 411 (N.D. 1994) (same). An incident may be considered "substantially similar" if the other incident is sufficiently similar in time, place, or circumstance. First Security Bank v. Union Pacific Railroad Co., 152 F.3d 877, 879 (8th Cir. 1998). "Even when substantial identity of the circumstances is proven, the admissibility of such evidence lies within the discretion of the district judge, who must weigh the dangers of unfairness, confusion, and undue expenditure of time in the trial of collateral issues, against the factors favoring admissibility." Hicks v. Six Flags Over Mid-America, 821 F. 2d 1311, 1316 (8th Cir. 1987); Crowston v. Goodyear Tire & Rubber Co., 521 N.W. 2d 401, 411 (N.D. 1994).

In the amended complaint, Olson has alleged a claim for failure to warn "prior to, during, and after the sale of the vehicle." See Amended Complaint, Docket No. 64. Under North Dakota law, "when a manufacturer learns about the dangers associated with the use of its product after it is manufactured and sold, the manufacturer has a post-sale duty to warn about these dangers . . . ." See North Dakota Pattern Jury Instruction C-21.25 (1996); see also Crowston v. Goodyear Tire & Rubber Co., 521 N.W.2d 401, 406-07 (N.D. 1994) (holding that § 28-01.1-02(3) recognized a duty to warn at any time a manufacturer becomes aware of any defect in a product). Thus, it is clear that Ford's knowledge or notice is an essential element of Olson's post-sale failure to warn claim.

Olson has provided an affidavit from expert witness Samuel Sero referencing customer complaints that he believes to be substantially similar to the Olson incident.[2]  See Docket No. 103, Exhibit 3; Docket No. 42, Exhibit 2.[3]  It is unclear whether Olson intends to offer evidence of other customer complaints.  In each of the customer complaints, a driver complains of experiencing either a sudden acceleration or the inability to stop the vehicle.  Many describe the vehicle as accelerating on its own, the inability to disengage the cruise control system, the accelerator sticking, and the inability of the brakes to stop the vehicle.

While the customer complaints are not admissible as evidence of a defect, the Court finds that the customer complaints are admissible to show that Ford received such complaints and was on notice of the allegations set forth in the complaints.  After carefully reviewing those customer complaints contained in the record, the Court finds those complaints involving Ford Explorers (model years 1995-1998) wherein the drivers complained of sudden acceleration, the accelerator sticking, and/or the inability of the brakes to stop the vehicle are substantially similar in time, place, and circumstance to the Olson accident and admissible as other incident evidence for the purpose of establishing notice.  The Court expressly finds that any customer complaint wherein the customer

---

[2]Four of the customer complaints are on forms provided by the U.S. Department of Transportation's National Highway Traffic Safety Administration.  See Docket No. 42, Exhibit 2, Attachments 5, 6, 7, & 8.  One is a letter to the Michigan Consumer Protection Division.  See Docket No. 42, Exhibit 2, Attachment 9.  One is a narrative describing an incident of sudden acceleration, but it does not identify the type of vehicle involved.  See Docket No. 42, Exhibit 2, Attachment 10.  Another is a letter to Ford's CEO Alex Trotman.  See Docket No. 42, Exhibit 2, Attachment 11.  Two of the attachments are search results from the National Highway Transportation Safety Administration's website with the first attachment regarding 1996 Explorers and the second regarding 1998 Explorers which revealed four and ten customer complaints respectively.  See Docket No. 42, Exhibit 2, Attachment 12 & 13.  The remaining two attachments are excerpts of e-mail correspondence of Casey Mulder which discuss an incident involving a 1997 Explorer and four other incidents involving Explorers without reference to the model year.  See Docket No. 42, Exhibit 2, Attachments 3 & 4.

[3]The affidavit filed in conjunction with Olson's response did not include the customer complaints; however, a search of the record revealed that this affidavit had previously been filed with the attached exhibits. The Court will refer to the complete affidavit of Sero filed on August 31, 2005.

noted the cruise control <u>was</u> <u>engaged</u> at the time of the sudden acceleration is <u>not</u> substantially similar to the Olson accident and is inadmissible.

This does not end the Court's inquiry. The Court must also analyze the customer complaints under the dictates of Rule 403 of the Federal Rules of Evidence. <u>Hicks v. Six Flags Over Mid-America</u>, 821 F. 2d 1311, 1316 (8th Cir. 1987)( "Even when substantial identity of the circumstances is proven, the admissibility of such evidence lies within the discretion of the district judge, who must weigh the dangers of unfairness, confusion, and undue expenditure of time in the trial of collateral issues, against the factors favoring admissibility."). As discussed above, Ford's knowledge or notice is an essential element of Olson's failure to warn claim. However, the Court finds that the introduction into evidence of the specific details of the customer complaints would not only be a waste of time, it would confuse and mislead the jury and be prejudicial to Ford. To that end, the Court will simply allow Olson to present evidence of those customer complaints meeting the criteria set forth above, but Olson will be prohibited from introducing the specific details of the complaints.[4] In addition, the Court will give the jury a limiting instruction to the effect that such evidence is admissible only for the purpose of establishing Ford's notice and cannot be used as evidence of a defect or for any other purpose. Counsel are directed to prepare and present to the Court a proposed instruction addressing this subject. <u>See</u> 8th Cir. Civil Jury Instr. 2.08B (2005).

---

[4]The Court anticipates that such evidence would be presented during the direct examination of expert Sero.

### c.   <u>USE OF CUSTOMER COMPLAINTS TO SHOW FACTUAL BASIS OF AN EXPERT OPINION</u>

Olson also asserts that the customer complaints are admissible through her expert witness, Samuel Sero, to provide a factual basis for his opinions.  Olson contends that Sero will testify that he has been provided with and has reviewed hundreds of other incidents of alleged or suspected failures of the "Next Generation Speed Control System" in Ford vehicles;  that he found it useful to examine reports of other incidents which he considered to be substantially similar to this occurrence; and that in his opinion these incident reports sets forth circumstances which he believes are substantially similar in terms of the manifestations of the same defect which, in his opinion, was the proximate cause of the Olson accident.  Ford does not specifically address the use of the customer complaints by an expert witness.

It is well-established that an expert may rely upon evidence not otherwise admissible to form his opinion.  <u>See</u> Fed. R. Evid. 703; <u>United States v. LeClair</u>, 338 F.3d 882, 885 (8th Cir. 2003)(facts or data that form the basis for an expert opinion need not be admissible in evidence in order for the expert's opinion to be admitted so long as the evidence is a type reasonably relied on by the experts in the field); <u>cf.</u> <u>Torbit v. Ryder System, Inc.</u>, 416 F.3d 898, 903 (8th Cir 2003) (experts reference to evidence of other injuries or accidents attributable to an alleged defective product is admissible if substantially similar).  An expert may "testify about facts and data outside of the record for the limited purpose of exposing the factual basis of the expert's opinion." <u>Sphere Drake Ins. PLC v. Trisko</u>, 226 F.3d 951, 995 (8th Cir. 2000).  Because such evidence is not admitted for its truth, but rather to inform the jury of the factual basis of the expert's opinion, it is admissible.  <u>Id.</u>

The Court finds that such testimony by Sero is admissible for the purpose of explaining to the jury the basis for his opinion and to establish that Ford had notice of these customer complaints.

13

However, just as with the use of the customer complaints to show notice, the Court finds that the introduction into evidence of the specific details of any particular customer complaints would not only be a waste of time, it would confuse and mislead the jury and be unfairly prejudicial to Ford. To that end, the Court will allow expert witness Sero to testify that he has reviewed the customer complaints and to generally explain how the customer complaints were of assistance in forming the basis for his opinions, but Sero will be prohibited from discussing the specific details of any of the complaints.  In addition, the Court will give the jury a limiting instruction to the effect that such evidence is admissible only for the limited purpose of presenting the factual basis for the expert's opinion.  Counsel are directed to prepare and present to the Court a proposed instructions address this subject.  <u>See</u> 8th Cir. Civil Jury Instr. 2.08B (2005).

**d.   <u>USE OF CUSTOMER COMPLAINTS FOR PURPOSES OF IMPEACHMENT, REBUTTAL, OR TO ESTABLISH PUNITIVE DAMAGES AWARD</u>**

As to Olson's assertion that the customer complaints would be offered for purposes of impeachment, rebuttal, or to establish the basis for a punitive damages award, the Court will reserve ruling on the admissibility of the customer complaints for such purposes.  The Court recognizes that the customer complaints may be admissible for purposes of impeachment, rebuttal, or establishing punitive damages.  The Court will revisit the issue of whether the customer complaints may be admitted for such purposes if and when the need arises.

## II.    STATISTICAL DATA

Ford also anticipates that Olson may attempt to assert that the Next Generation Speed Control System's speed control cable is defective because of the number of complaints received. Olson's response does not specifically address the issue of statistical data.

Just as the underlying customer complaints are inadmissible as hearsay, the Court finds that any statistical compilation of the data contained in the customer complaints is also hearsay. However, Olson may reference the number of "substantially similar" customer complaints received to establish notice and for purposes of explaining the factual basis of an expert's opinion pursuant to the limitations set forth above.  The Court will revisit the issue of whether a statistical compilation of the number of complaints may be received for purposes of impeachment, rebuttal, and/or establishing punitive damages.

## III.    TESTIMONY

Finally, Ford asserts that testimony concerning other incidents of sudden acceleration are not relevant and are inadmissible.  Ford points to Olson's Rule 26(a)(1) disclosure which identified individuals who are expected to testify as to:

> having experienced one or more incidents of (1) unwanted acceleration and/or failure of speed control to disengage, and (2) reduced effectiveness of braking with open throttle in a Ford Explorer equipped with a Next Generation Speed Control System.

See Docket No. 84, Exhibit H.  Ford asserts that testimony from these individuals does not tend to prove that the speed control cables in each of the vehicles was stuck due to dirt or debris.  Ford contends that the specific incidents identified by Olson are not incidents in which the speed control

15

cable was found to be stuck due to dirt or debris, and, as a result, these incidents lack relevance to Olson's claims.

Olson contends that she intends to offer the video deposition testimony of Kenneth Woddail, Irene Wise, and Matthew Hackney, which was taken in conjunction with a prior case, and the video deposition testimony of Wendy Crowell and Jeffrey Crowell, which was taken in conjunction with this case. Olson contends that the deposition testimony of these witnesses relates to substantially similar incidents involving Ford vehicles.

Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

As set forth above, "[e]vidence of similar incidents may be relevant to prove the defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation." Lovett v. Union Pacific Railroad Co., 201 F.3d 1074, 1081 (8th Cir. 2000). Evidence that a manufacturer received customer complaints about a particular defect is admissible to show knowledge or notice on the part of the manufacturer. See Lewy v. Remington Arms Co., Inc., 836 F.2d 1104, 1108-09 (8th Cir. 1988)(evidence of customer complaints was relevant to the issue of whether the manufacturer had notice); see also First Security Bank v. Union Pacific Railroad Co., 152 F.3d 877, 879 (8th Cir. 1998)(evidence of other accidents may be relevant to prove notice of the existence of defects).

In order for similar-incident evidence to be admissible it must be "substantially similar" to the case at bar.  Id.; see Hale v. Firestone Tire & Rubber Co., 756 F.2d 1322, 13332 (8th Cir. 1985); Crowston v. Goodyear Tire & Rubber Co., 521 N.W. 2d 401, 411 (N.D. 1994) (same).  An incident may be considered "substantially similar" if the other incident is sufficiently similar in time, place, or circumstance.  First Security Bank v. Union Pacific Railroad Co., 152 F.3d 877, 879  (8th Cir. 1998).  "Even when substantial identity of the circumstances is proven, the admissibility of such evidence lies within the discretion of the district judge, who must weigh the dangers of unfairness, confusion, and undue expenditure of time in the trial of collateral issues, against the factors favoring admissibility."  Hicks v. Six Flags Over Mid-America, 821 F. 2d 1311, 1316 (8th Cir. 1987); Crowston v. Goodyear Tire & Rubber Co., 521 N.W. 2d 401, 411 (N.D. 1994).  The burden is on the proponent of such evidence to show that it is substantially similar.  Hicks v. Six Flags Over Mid-America, 821 F. 2d 1311, 1315 (8th Cir. 1987).

### A.    KENNETH WODDAIL

Olson provided the Court with one page from Kenneth Woddail's deposition transcript.  It appears that the cruise control was engaged in Woddail's automobile (the limited information provided to the Court does not identify the make or model year of the vehicle); he attempted to disengage the cruise control, and was unable to do so.  Woddail then stepped on the brake and was still unable to slow the automobile down.

After carefully reviewing the record, including the single page of Woodail's deposition transcript, the Court finds that Olson has failed to meet her burden and has failed to show that this incident is substantially similar to the accident on September 17, 2002.   The Court is unable to

identify the type of automobile involved in this incident.  The fact the cruise control <u>was</u> <u>engaged</u> also weighs against the admissibility of such evidence.  As a result, the Court finds that the testimony of Kenneth Woddail is inadmissible because it is clearly not evidence of a substantially similar incident.  Further, even if evidence of the Woddail incident would be deemed relevant and substantially similar, the Court would nevertheless exclude such evidence for all of the reasons enumerated in Rule 403 of the Federal Rules of Evidence.

### B.   <u>IRENE WISE</u>

The parties expect that Irene Wise will testify that she was a passenger in her 1995 Mercury Grand Marquis, and that the driver of the car applied the brakes to release the cruise control, but the vehicle would not slow down.  Ford contends that this incident is not similar to the current case because the cruise control was engaged and the vehicle is a different model than Olson's.  In her response, Olson does not specifically address the testimony of Wise.

After carefully reviewing the record, including the transcript of Wise's deposition, the Court finds that Olson has failed to meet her burden and has failed to show that this incident is substantially similar to this case to warrant its admissibility at trial.  The fact the cruise control <u>was</u> <u>engaged</u>, as well as the difference in the model of the automobile, combined with the fact that Wise was not the driver of the automobile, all weigh strongly against the admissibility of such evidence.  As a result, the Court finds that the testimony of Irene Wise is inadmissible because it is not evidence of a substantially similar incident.  Further, even if evidence of this incident would be deemed relevant and substantially similar, such evidence would be excluded for all of the reasons enumerated in Rule 403.

### C.     **MATTHEW HACKNEY**

As to Matthew Hackney, Olson has provided the Court with only one page of his deposition transcript.  The Court is unable to tell what type of vehicle Hackney was driving or whether the cruise control was engaged.  The Court finds that Olson has failed to meet her burden and has failed to establish that Hackney was involved in a substantially similar incident.  Thus, the testimony of Matthew Hackney is inadmissible.  In addition, even if this incident would be considered relevant and substantially similar, the Court would exclude such evidence at trial for all of the reasons enumerated in Rule 403.

### D.     **WENDY AND JOHN CROWELL**

This incident involved the Crowell's 1995 Ford Explorer.  The parties expect Wendy Crowell to testify that as she was leaving a shopping mall parking lot, and she speed up to 25 mph.  Upon reaching this speed, Crowell maintains that she lifted her foot off the accelerator.  Crowell contended that the accelerator remained depressed, the vehicle continued to accelerate, and the brakes would not slow the vehicle down.  Crowell has testified that this type of incident occurred between 20 - 30 times in her vehicle, but she had never taken the vehicle in for service.  Ford contends that this incident is not substantially similar because there is no claim that the incidents were caused by a jammed or stuck cruise control cable.  In her response, Olson does not specifically address the testimony of Wise.

After carefully reviewing the record, including the deposition testimony of Wendy Crowell and John Crowell, the Court finds that this incident is substantially similar to the Olson accident.  However, the Court, in its discretion, may exclude evidence of substantially similar incidents if

admitting such evidence would result in unfairness, confusion, and an undue expenditure of time at trial on collateral issues.  <u>Hicks v. Six Flags Over Mid-America</u>, 821 F. 2d 1311, 1316 (8th Cir. 1987); <u>Crowston v. Goodyear Tire & Rubber Co.</u>, 521 N.W. 2d 401, 411 (N.D. 1994).  The Court finds that admitting the testimony of the Crowells would mislead the jury and confuse the issues. The Court further finds that the testimony of the Crowells would result in an undue expenditure of time in what appears to be an already lengthy trial, and would waste time discussing collateral issues as to what caused the Crowells' vehicle to allegedly malfunction.  This case concerns the Olson accident on September 17, 2002.  The Court finds the testimony of the Crowells, although relevant, is inadmissible pursuant to Rule 403 of the Federal Rules of Evidence.

As with the documentary evidence of customer complaints, the Court will revisit the admissibility of the testimony of specific individuals involved in other substantially similar incidents for purposes of impeachment, rebuttal, or to establish punitive damages.


IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Court **GRANTS**, in part, the "Defendant's Motion in Limine No. 1 to Exclude Other Incidents Without a Prior Showing of Substantial Similarity." (Docket No. 83).  The plaintiff is precluded from introducing or making reference to other customer complaints and/or statistical data during voir dire, opening statements, and during her case-in-chief to prove brake ineffectiveness, relative dangerousness of condition, negligence, and/or a defective condition.  The plaintiff will be allowed to present <u>generalized</u> evidence of customer complaints and/or statistical data in her case-in-chief for the sole purpose of showing notice and/or to provide a factual basis for an expert witness' opinion, i.e., Samuel Sero.  However, the plaintiff will be

prohibited from introducing the specific details of any such complaints.  The plaintiff will also be prohibited from introducing testimony from specific individuals involved in other substantially similar incidents during her case-in-chief.  The Court will revisit the use of both documentary and testimonial evidence for purposes of impeachment, rebuttal, or to establish punitive damages.  In addition, the Court directs counsel for both parties to inform their clients and potential witnesses of the prohibitions set forth in this order.

Finally, the Court **ORDERS** that the plaintiff refrain from any presentation to the jury of other substantially similar incidents, other related incidents, or any customer complaints until the following procedure has been undertaken:

1)  If plaintiff's counsel intends to directly or indirectly comment on, or refer to, or offer any evidence of other substantially similar incidents, including numbers of incidents or statistical data, whether for the purpose of demonstrating notice on the part of Ford or to establish the factual basis for an expert's opinion, plaintiff's counsel must first identify the other incidents and provide notice to defense counsel forty-eight (48) hours in advance to allow opposing counsel an opportunity to prepare an objection on admissibility outside the presence of the jury, or in the interests of judicial economy, to propose a stipulation to address the plaintiff's proposed testimony or evidence.  For example, if Ford does not intend to challenge or contest notice, then a stipulation may be an appropriate means of handling such evidence in an expeditious manner.

2)  A brief hearing will then be held outside the presence of the jury at which time the plaintiff must demonstrate that the evidence to be offered is relevant, substantially

21

similar, and admissible under Rule 403. The defendant will be afforded the opportunity to note objections to the introduction of such evidence or to propose a stipulation or other alternative means to address such evidence at trial.

**IT IS SO ORDERED.**

Dated this 25th day of January, 2006.

Daniel L. Hovland, Chief Judge
United States District Court